## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Fatmata Bangura<br>13649 Lynn Street<br>Woodbridge, VA 22191 | ) <br> ) <br> ) <br> ) | |
| Momoh Bangura<br>A096-617-205<br>13649 Lynn Street<br>Woodbridge, VA 22191 | ) <br> ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) <br> ) | Civil Action No. |
| v. | ) <br> ) | |
| Jeff Sessions, Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, DC 20530-0001 | ) <br> ) <br> ) <br> ) <br> ) | |
| Kimberly Zanotti, Field Officer Director<br>US Department of Homeland Security<br>USCIS<br>Washington Field Office<br>2675 Prosperity Avenue<br>Fairfax, VA 20598-2400 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Sarah Taylor, District Director<br>US Department of Homeland Security<br>USCIS<br>Washington Field Office<br>2675 Prosperity Avenue<br>Fairfax, VA 20598-2400 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Kirstjen M. Nielsen, Secretary, DHS<br>245 Murray Lane, S.W.<br>Washington, DC 20528 | ) <br> ) <br> ) <br> ) | |
| L. Francis Cissna, Director, USCIS<br>20 Massachusetts Avenue, N.W.<br>Washington, DC 20529 | ) <br> ) <br> ) <br> ) | |
| Defendants | ) <br> ) | |

_____)

1

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. The Plaintiffs, Fatmata Bangura and Momoh Bangura, through undersigned counsel, complaint of the Defendants, Sarah Taylor, District Director, Washington District Office, U.S. Citizenship and Immigration Services; Kimberly Zanotti, Field Office Director, Washington District Office, U.S. Citizenship and Immigration Services; L. Francis Cissna, Director, U.S. Citizenship and Immigration Services; Kirstjen M. Nielsen, Secretary, U.S. Department of Homeland Security; and Jeff Sessions, Attorney General of the United States as follows:

### PREFATORY STATEMENT

1. This is an action brought pursuant to Section 10b of the Administrative Procedure Act, 5 U.S.C. §702, and 28 U.S.C. §1331, seeking review of a decision by the Defendant U.S. Citizenship and Immigration Services ("USCIS"), which was affirmed by the Board of Immigration Appeals ("BIA"), to deny a Form I-130 Petition for Alien Relative filed by Fatmata Bangura on behalf of her husband Momoh Bangura ("the I-130 Petition"). The agency's decision to deny the I-130 Petition was arbitrary, capricious, an abuse of discretion, and was not supported by substantial and probative evidence. The Plaintiffs presented evidence in support of the I-130 Petition and probative evidence is lacking in the evidentiary record which supports the agency's allegation that Mr. Bangura engaged in marriage fraud and thus is precluded from approval of any subsequent visa petition pursuant to Section 204(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §1154(c). The agency's decision lacks an adequate basis and should be reversed.

2.  The I-130 Petition was supported by evidence demonstrating the bona fide nature of the Plaintiffs' marriage.  Furthermore, the evidentiary record does not support USCIS's allegation of prior marriage fraud by Mr. Bangura.  The USCIS and BIA decisions rest on an unsubstantiated statement by Mr. Bangura's ex-wife Lashonna Baylor dated March 28, 2016 more than eleven years after they were divorced and two years after Mr. Bangura and Mrs. Bangura went for their interview for their I-130 Petition on March 12, 2014, which is hearsay.  The statement was <u>manufactured</u> and <u>concocted</u> by the Service because there was not sufficient substantive and probative evidence in the file to deny the I-130 Petition.  As such, the statement was taken at Fairfax Hospital when Mr. Bangura was not present nor was he a party involved nor did Mr. Bangura have the opportunity to address the statement.  There is nothing in the evidentiary record to suggest that Mr. Bangura did not in fact have a bona fide marriage to Ms. Baylor.  Further, Mr. Bangura presented documents to show that he and Ms. Baylor did establish a marriage together including affidavits and bank statement.  The evidentiary record does not present substantial and probative evidence and is therefore contrary to the established case law in this area. The record does not support that Mr. Bangura entered into his marriage with Ms. Baylor to procure an immigration benefit and his permanent residence, and is not substantial evidence, contrary to the agency erroneous speculation and conclusion.

3.  Consequently, the Plaintiffs seeks an order reversing the agency's decision as arbitrary, capricious, contrary to law, and unsupported by the evidence of record. The agency's erroneous decision has caused irreparable and continuing harm to the Plaintiffs, as denial of the I-130 Petition deprives Mr. Bangura of the ability to obtain

U.S. lawful permanent residency and renders him subject to removal from the United States, thereby resulting in separation from his U.S. Citizen wife of five years, their three U.S. citizen children and banishment from the country that has been his home for the past fourteen years.

### a. JURISDICTION

4. This is a civil action brought pursuant to 5 U.S.C. §701 et seq., the Administrative Procedure Act ("APA"), and 28 U.S.C. §1331 (federal subject matter jurisdiction), as well as 8 U.S.C. §1101 et seq., the Immigration and Nationality Act ("INA"). The original jurisdiction is vested in this Court by 8 U.S.C. §1329 (jurisdiction of the district courts), 28 U.S.C. §1346(a)(2) (civil actions against the United States), and 28 U.S.C. §2201 (declaratory relief), to redress the deprivation of rights, privileges, and immunities secured to the Plaintiffs.

### A. Subject Matter Jurisdiction

5. Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. §702. The APA provides further that the "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. §704. The APA defines "agency action" to include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §551(13). Agency action includes a final decision denying an I-130 Petition for Alien Relative pursuant to INA §204(c) and 8 C.F.R. §204.2(a)(I)(ii). *See, e.g., Asamoah v.*

*Napolitano,* 2010 U.S. Dist. LEXIS 129452, at *9 (D. Md. Dec. 8, 2010) ("The APA, in

conjunction with the federal question jurisdiction statute, provides the statutory

basis for a court to review a final agency action, in this case the USCIS's denial of

[plaintiff's] I-130 petition."); *see also Ginters v. Fraizer,* 614 F.3d 822, 828-29 (8th

Cir. 2010) (ruling that U.S. District Court has subject matter jurisdiction to review

USCIS's denial of I-130 Petition for Alien Relative); *Ogbolumani v. Napolitano,* 557

F.3d 729, 733 (7th Cir. 2009) (same); *Ruiz v. Mukasey,* 552 F.3d 269 , 274-76 (2d Cir.

2009) (same).

6. The APA does not independently provide a basis for subject matter jurisdiction.

*Califano v. Sanders,* 430 U.S. 99, 107 (1977). "Pursuant to 28 U.S.C. §1331, though, a

federal district court has jurisdiction over 'all civil actions arising under the

Constitution, laws, or treaties of the United States.'" *Liu v. Novak,* 509 F. Supp. 2d 1, 8

(D.D.C. 2007) (quoting 28 U.S.C. §1331). As this Court has recognized, "the APA, in

conjunction with the federal question jurisdiction statute, provides the statutory

basis for a court to review a final agency action, in this case, the USCIS's denial of

[plaintiff's] I-130 petition." *Asamoah,* 2010 U.S. Dist. LEXIS 129452, at *9.

**B. Standing**

7. Since the Plaintiffs have suffered an injury- in- fact; the denial of their I-130 Petition

and Mr. Bangura's consequent inability to obtain adjustment to lawful permanent

resident status on that basis thus the Plaintiffs have standing for the complaint. *See,*

*e.g., Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (holding that

standing requires a plaintiff to show (1) an injury in fact, (2) a causal connection

between the injury and the complained-of conduct, and (3) a likelihood that the

injury will be redressed by a favorable decision). The Plaintiffs have standing as they have "'alleged such a personal stake in the outcome of the controversy' as to warrant their invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf." *Warth v. Seldin*. 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)); *see also Defenders of Wildlife v. Gutierrez*, 532 f.3d 913, 924 (D.C. Cir. 2008). As the courts have explained, "The redressability inquiry poses a simple question: If plaintiff secured the relief [he] sought, ... would it redress [his] injury?" *Wilderness Society v. Norton*, 434 F.3d 584 (D.C. Cir. 2006). A favorable decision by this Court, reversing the Defendants' unreasonable denial of the Plaintiff's I-130 Petition, will grant the Plaintiffs the relief they seek.

### C. Ripeness

8. This case is ripe for review because the Plaintiffs have exhausted their administrative remedies and no appeal of the agency's decision is pending. On December 28, 2017, the Board of Immigration Appeals ("BIA") dismissed the Plaintiff's appeal of USCIS's February 27, 2017 decision denying the I-130 Petition filed by Fatmata Bangura on behalf of her husband Momoh Bangura. No further administrative review is available to the Plaintiffs. *See* 8 C.F.R. §1204.1. Thus, the BIA's decision is a final agency action that is ripe for review by this Court.

## II.   VENUE

9. Venue is proper under 28 U.S.C. §1391(e), because this is an action against officers and agencies of the United States in their official capacities and no real property is involved in the action.

6

### III.  PARTIES

10.  The Plaintiff, Momoh Bangura, is a native and citizen of Sierra Leone who has

   resided in the United States since 2004, for more than fourteen years.  Mr. Bangura

   is the intended beneficiary of a Form I-130 Petition for Alien Relative ("I-130

   Petition") filed by his wife, Fatmata Bangura.  The Plaintiff, Fatmata Bangura, is a

   United States Citizen.  She is the petitioner of an I-130 Petition filed on behalf of her

   husband, Momoh Bangura.  Fatmata Bangura and Momoh Bangura have been

   married since February 2013, and they reside together in Woodbridge, VA.

11. The Defendants, Sarah Taylor, District Director, Washington District Office, U.S.

   Citizenship and Immigration Services; Kimberly Zanotti, Field Office Director,

   Washington District Office, U.S. Citizenship and Immigration Services; L. Francis

   Cissna, Director, U.S. Citizenship and Immigration Services; Kirstjen M. Nielsen,

   Secretary, U.S. Department of Homeland Security; and Jeff Sessions, Attorney

   General of the United States are charged by law with the statutory and regulatory

   obligation to determine eligibility for I-130 Immigrant Petitions for Alien Relative,

   pursuant to INA §§201(b)(2)(A)(i), 204(a)(1)(A) and 8 C.F.R. §§204.1(a)(1), 1204.1.

### IV. STATEMENT OF FACTS

*A. Mr. and Mrs. Bangura's Current Marriage and I-130 Petition*

12. The Plaintiff, Momoh Bangura, is a native and citizen of Sierra Leone who was first

   admitted to the United States in April 2004 as a B1/B2 nonimmigrant.  He has lived

   in the United States since that time, for more than fourteen years.  Mr. Bangura is

   married to Fatmata Bangura, a U.S. Citizen and they reside in Woodbridge, VA.  They

   have been married for more than five years.  They have three United States Citizen

children together; Khadija Hafsa Bangura, Hayaan Al-Amin Bangura, and Hamza
Allie Kamara.

13. Mrs. Bangura and Mr. Bangura met for the first time at a soccer tournament in
Landover, MD in the summer of 2007. They started dating briefly but Mrs. Bangura
found out that Mr. Bangura was married around the same time she found out she
was pregnant with their first child. She was mad and disappointed so she ended all
contact with him and never told him about the baby.  In 2012, Mr. and Mrs. Bangura
met after five years of no communication at a child's birthday party.  They talked
briefly.  Mr. Bangura asked a few friends who were at the party about Mrs. Bangura
and one of them gave him her number and the couple started talking again. Mr.
Bangura apologized for not telling Mrs. Bangura about his previous marriages and
asked if she could forgive and take him back. Mrs. Bangura agreed because of their
son whom she didn't want to grow up without his father in his life. Mr. Bangura
proposed to Mrs. Bangura in January 2013 and the couple was married on February
28, 2013 in Alexandria, VA. They have had a stable loving family home, happily
married, at last, and raising their three kids with love and affection since 2013, for
more than five years.

### B. Mr. Bangura's Marriage to Ms. Lashonna Baylor

1.  Mr. Bangura married Ms. Lashonna Baylor, for no other reason than love; their
previous relationship was a bona fide marriage. Ms. Baylor and Mr. Bangura got
married very young, in their early 20's.  Once they got married they began fighting
excessively; Ms. Baylor was staying out late and not telling Mr. Bangura where she
was.  Ms. Baylor was angry with Mr. Bangura because he wanted a traditional family

home life with a wife that takes care of him and their home and she rebelled against

it. She wanted to be free and do what she wanted. Culturally, Mr. Bangura having

just come to the U.S. from Africa a year before had very different beliefs than Ms.

Baylor and they were both very young. Their marriage ended because in the end

they were fighting all the time and Ms. Baylor did not want to be a traditional wife.

Unfortunately due to many issues, including Ms. Baylor's youth, substance

dependency and her lack of faith in God, their marriage did not work.

2. The couple divorced in 2006. They stopped all contact with each other. On May 19,

2006, Mr. Bangura's previous attorney, Jillian Kong-Sivert, sent a letter to USCIS

verifying that Ms. Baylor and Mr. Bangura wanted to withdraw the I-130 Petition.

However, in its decision, the Service dismisses the April 13, 2006 letter submitted

by Ms. Baylor and Mr. Bangura withdrawing the I-130 Petition and erroneously

states Ms. Baylor withdrew the petition. It was not just Ms. Baylor who withdrew

the petition; the couple filed the withdrawal together. The joint withdrawal of the I-

130 petition does not render derogatory information in the record in support of a

fraudulent marriage.

3. Since Mr. Bangura and Ms. Baylor withdrew the I-130 petition and they did not go to

the I-130 interview there was no substantive and probative evidence of marriage

fraud in the record. Therefore, the Service, ten years after Mr. Bangura and Ms.

Baylor withdrew their I-130 petition, and two years after Mr. and Mrs. Bangura

went for their I-130 interview, the Service went on a fishing expedition with the

purpose of getting and creating evidence to concoct and manufacture derogatory

evidence to place in Mr. Bangura's record to justify denying Mrs. Bangura's I-130 petition, which is an abuse of power and discretion and unsupported by law and agency policy.

### C.  Ms. Baylor's March 28, 2016 Statement

4.  In its denial decision, USCIS cites to a statement from Mr. Bangura's ex-wife Ms. Lashonna Baylor dated March 28, 2016 more than eleven years after Ms. Baylor and Mr. Bangura were divorced and two years after my Mr. Bangura and Mrs. Bangura went for the interview for I-130 Petition.  This statement was not made contemporaneously or even close to date of time of marriage or divorce so should be given no weight. The validity and voracity of this statement and how USCIS sought Ms. Baylor out and used this statement against Mr. Bangura is an abuse of power and hearsay. Since she does not work at the hospital where thy allegedly interviewed her one can only assume she was either a patient or there visiting a patient.

## V.  CAUSE OF ACTION

### A.  Standard for Approval of I-130 Petition for Alien Relative

5.  A United States Citizen wishing to sponsor her spouse for lawful permanent resident status must file with USCIS a Form I-130 Petition for Alien Relative. *See* 8 C.F.R. §204.1(a)(1), 204.2(a).  The statutory provision authorizing the I-130 process provides, in relevant part, that "the Attorney General, shall, if he determines that the facts stated in the petition are true ..., approve the petition[.]"  INA §204(b), 8 U.S.C. §1154(b).  The test for a bona fide marriage under the immigration laws is whether

at the time of the inception of the marriage, the parties intended to establish a life together. *Lutwak v. United States*, 344 U.S. 604 (1954); *Damon v. Ashcroft*, 360 F.3d 1084, 1089 (9th Cir. 2004); *Matter of Laureano*, 19 I& N Dec. 1 (BIA 1983).

6. The INA further provides that "no petition shall be approved if… the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States… by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration[.]" INA §204(c)(1), 8 U.S.C. §1154(c)(1). A determination of marriage fraud made pursuant to INA §204(c) must be supported by "substantial and probative evidence." *Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006); *see also* 8 C.F.R. §204.2(a)(1)(ii); *Matter of Tawfik*, 20 I & N Dec. 166, 167 (BIA 1990). In order for evidence to be substantial, it must be "more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Noriega v. Gonzales,* 2009 U.S. Dist LEXIS 68811, at *11 (D.N.J. Aug. 6, 2009).

*B. Standard and Scope of Review*

7. As this Court has held, the APA, along with the federal question statute, provides jurisdiction for review of a final agency action by USCIS to deny an I-130 petition. *Asamoah*, 2010 U.S. Dist. LEXIS 126452, at *9. A district court's review under the APA is deferential and generally is limited to determining whether the agency action is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *Id.* at *10; *see also Ohio Valley Envlt. Coal. V. Aracoma Coal*, 556 F.3d 177, 192 (4th Cir.

11

2009).  An agency decision is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation for its decision.  *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983).  A reviewing court "must overturn any finding of marriage fraud not supported by substantial and probative evidence."  *Bangura*, 434 F.3d at 502.

8.  Judicial review under the APA normally is limited to the administrative record that was before the agency when it made its decision.  *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, 766 (8th Cir. 2004).  However, some courts have found that an incomplete record can be a basis for an exception to the rule.  *See, e.g. Sabhari v. Cangemi*, 2005 U.S. Dist. LEXIS 3550, at *6-*- (D. Minn. Mar. 9, 2005) (decrying a "dearth of information" in the record pertaining to USCIS's denial of the plaintiffs' second and third visa petition, and upholding the judge's discovery order that was "narrowly tailored to the issue at hand and [] not overly burdensome").

9.  Even though USCIS enjoys broad discretion to grant or deny immigrant petitions, this discretion is not unfettered.  The agency cannot base it allegations and conclusions without substantial evidence.  Where it does so, the agency's action is considered arbitrary and capricious and an abuse of discretion.  *See* 5 U.S.C. § 706.

**A.  The USCIS Has Not Met Its Burden Under Section 204 (c) of the Act As The Record Does Not Contain Substantial and Probative Evidence that Mr. Bangura's Former Marriage was Entered Into For the Purpose of Evading the Immigration Laws**

10. The decision by USCIS denying Mrs. Bangura's I-130 Petition on behalf of her husband and the subsequent BIA decision affirming that denial, are not supported by substantial evidence.  In its decision, the Board concludes the Service had "an

adequate basis to deny the current visa petition pursuant to section 204(c) of the Act" Decision at 2.

11. However, this argument is flawed and again points to the fact that there is no substantial or probative evidence that Mr. Bangura entered the marriage to Ms. Baylor to commit fraud or to procure an immigration benefit. The BIA's conclusion is based in speculation, particularly where it states that Ms. Baylor's statement is not "false" even though it was sought out and manufactured by the Service ten years after the couple divorced, which the BIA states "there is no evidence of coercion or wrongdoing on the part of the DHS investigators." Decision at 2.

12. Since the interview circumstances at the hospital rather than at a USCIS interview and there is no evidence on how or what was said to and during the interview and surrounding context and circumstances the statement itself is tainted and was not properly obtained in conjunction with USCIS interview rules within timeframs that is reasonable.

13. In order for a visa petition to be barred by INA 204(c), there must be "substantial and probative evidence" of such an attempt or conspiracy and the derogatory evidence must be contained in the alien's file. See 8 CFR 103.2 (b) (16) (i), 204.2(a) (1) (ii); Matter of Tawfik, 20 I&N Dec.166, 167 (BIA 1990). If there is substantial and probative evidence, "the district director must deny any subsequent visa petition for immigrant classification filed on behalf of such alien, regardless of whether the alien received a benefit through the attempt or conspiracy. As a basis for the denial it is not necessary that the alien have been convicted of, or even prosecuted for, the

attempt or conspiracy." See <u>Matter of Tawfik</u> at 167. In reaching such a conclusion, USCIS ".....may rely on any relevant evidence, including evidence having its origin in prior Service proceedings involving the beneficiary, or in court proceedings involving the prior marriage. Ordinarily, the district director should not give conclusive effect to determinations made in a prior proceeding, but, rather, should reach his [or her] own independent conclusion based on the evidence before him [or her]." See <u>Matter of Tawfik</u> at 168.

14. There is no such evidence in this case.  The statement from Mr. Bangura's ex-wife Ms. Lashonna Baylor dated March 28, 2016 more than eleven years after Ms. Baylor and Mr. Bangura were divorced and two years after Mr. Bangura and Mrs. Bangura went for the interview for their I-130 Petition was not made contemporaneously or even close to date of time of marriage so should be given no weight. The validity and voracity of this statement and how USCIS sought Ms. Baylor out and used this statement against Mr. Bangura is an abuse of power and hearsay.

15. Ms. Baylor and Mr. Bangura jointly withdrew I-130 Petition.  However, in its decision, the Service dismisses the April 13, 2006 letter submitted by Ms. Baylor and Mr. Bangura withdrawing the I-130 Petition and erroneously states Ms. Baylor withdrew the petition.  It was not just Ms. Baylor who withdrew the petition; the couple filed the withdrawal together.

16. Since Mr. Bangura and Ms. Baylor withdrew the I-130 petition and they did not go to the I-130 interview there was no substantive and probative evidence of marriage fraud in the record, therefore, the Service, ten years after Mr. Bangura and Ms. Baylor withdrew their I-130 petition, the Service went on a fishing expedition to

find and manufacture derogatory evidence to place in Mr. Bangura's record to justify

denying Mrs. Bangura's I-130 petition.

17. Further, this case can be distinguished by the facts in Ghaly v INS, 48 F.3d 1426 (7th

Cir 1995, unlike in the Ghaly case where the reasons for withdrawal was part of the

record close to the petition withdrawal.  In the instant case, there was no substantial

and probative evidence of marriage fraud in the record, so the Service had to

concoct and manufacture evidence by seeking out Ms. Baylor to sign a statement

which was added to Mr. Bangura's record, not part of his record at the time Mr. and

Mrs. Bangura went for their I-130 interview two years prior.  As such, the Service

was seeking evidence to justify the denial they were determined to make, which is

an abuse of discretion and power and very different than the Board's

characterization of the action as "the agency's duty to investigate." Decision at 2.

This "duty to investigate" is not cited in any case law, statute, or policy but

justification for the Service to concoct and manufacture evidence under the guise of

"substantial and probative" however the biased hearsay statement is neither.

Where there is "substantial and probative evidence" of prior marriage fraud in the

record, the burden then shifts to the petitioner to overcome this evidence. Hence,

the petitioner must present evidence to show that the prior marriage was not

entered into the primary purpose of evading immigration law. See Matter of Phillis

at 386.  None of these apply in this case and the Service has not met its burden

under 204 (c).

**B.  The USCIS and BIA Erroneously Utilizes Hearsay Statement to Deny the I-130 Petition Which is Fundamentally Unfair**

18. The USCIS and BIA based their denials on irrelevant, uncorroborated hearsay evidence in Ms. Baylor's statement.  This uncorroborated statement is directly contradicted by sworn affidavits from Mr. Bangura, Mr. Sandy, Mr. Kamara and documentary evidence provided by the Plaintiffs, which convincingly establish Mr. Bangura never engaged in marriage fraud and that his prior marriage was not entered into for the purposes of evading the immigration laws.  The agencies unreasonably discounted and disregarded this rebuttal evidence.  This reliance on hearsay is fundamentally unfair and thus should not be admissible in administrative proceedings and should be stricken from the record.  Seghal v. Johnson, 105 F. Supp. 3d 860, 2015 U.S. Dist. LEXIS 63147; Ogbolumani v. Napolitano, 557 F.3d 729, 736 (7th Cir. 2009);; *see also Pouhova v. Holder*, 726 F.3d 1006, 1011 (7th Cir. 2013); *Olowo v. Ashcroft*, 368 F.3d 692, 699 (7th Cir. 2004).

19. The hearsay statement of Ms. Baylor as a basis for the agencies denial is remarkable as the record contains affidavits provided by Mr. Bangura, Mr. Sheku, and Mr. Kamara contradicting the statement.  Further, the statement relied on by the agencies are unreliable because Ms. Baylor is clearly biased and cannot reasonably be expected to confirm the marriage was bona fide and is a product of an individual who has a grudge against her ex-spouse and sees the intimidation by the federal officer for such a statement as an opportunity to retaliate against Mr. Bangura.

20. The significantly delayed affidavit (ten years delayed) by Ms. Baylor in a hospital not at an interview at USCIS is a very troubling abuse of power and discretion since Mr. Bangura does not know the conditions under which the statements were made and

the Service is taking Ms. Baylor's statements as fact and Mr. Bangura's statement

and all other corroborating evidence is being dismissed.

21. This statement does not meet the standard required for substantive and probative. For instance, while Ms. Baylor states she never lived with Mr. Bangura, the record contains an affidavit from Mr. Kamara stating the couple rented a home from him. Also, while Ms. Baylor states the couple never opened joint marital accounts, the record contains statement for a joint account for the couple. These contradictions in the record, question the motive and veracity of the hearsay statement and verify the Service's abuse of power and discretion in utilizing the statement to deny the I-130 petition. *See NOID response.*

22. Further, the BIA and USCIS failed to consider Mr. Bangura's statement regarding Ms. Baylor's statement. In his affidavit, Mr. Bangura states:

> I am in shock that USCIS would abuse their discretion and power and seek Lashonna out eleven years after we were divorced to have her sign a statement at Fairfax Hospital?! We question the validity of this statement and how USCIS sought Lashonna out and used this statement against me. When the two Immigration Officers went to see Lashonna, her mother Kathy called Sheku Sandy right away and they called me together on the phone. We were all in such surprise that more than eleven years after we were divorced immigration went to see her at Fairfax Hospital? This doesn't make sense and seems like Immigration is looking for an issue and abusing their discretion. In her statement, Lashonna allegedly states that Sheku arranged for Lashonna and I to get married so that I could get a green card. Further, in the statement Lashonna allegedly states we never lived together and that I paid her money and we married for the sole purpose of me obtaining a green card. **This is completely untrue. I do not understand how Immigration can take weight of this statement and not my previous affidavit and this one. This seems like an abuse of power and discretion. As I stated previously, I did not marry Lashonna for a green card.**

*See BIA Appeal.*

23. The agencies have applied a glaring double standard in this case, discounting numerous sworn affidavits from direct witnesses to the marriage, Mr. Bangura, Mr. Sheku, Mr. Kamara, and utilizing hearsay by Ms. Baylor. The agencies acceptance of Ms. Baylor's statement while at the same time unreasonably discrediting Mr.

Bangura, Mr. Sheku, and Mr. Kamara's statements is arbitrary, unreasonable, and in violation of the agency's duty to fairly adjudicate petitions based on the totality of the evidence presented, as well as requirements for 204 (c) finding.

C. **The USCIS and BIA Are Requiring Evidence of Bona Fide Marriage Above Requirements and Case Law Which is Unreasonable and Abuse of Their Discretion**

24. The USCIS and BIA are disregarding substantive and probative evidence of bona fide marriage in the record and instead denying the petition based on "insufficient evidence to establish that the beneficiary entered into a bona fide marriage with his first wife." Decision at 2.   This is unreasonable and blatant abuse of discretion by the Service and BIA.  The Service cannot provide examples of evidence an individual can provide to establish bona fide marriage and then summarily dismiss the evidence.

25. Further, it is unreasonable to require evidence of a bona fide marriage that ended more than ten years ago in 2006 of such a short duration of a few months.   Mr. Bangura and Ms. Baylor were young when they were married, both 20 and 21; their marriage, while bona fide, was short in duration of a few months in 2005 and ended more than 10 years ago.  It is unreasonable and abuse of discretion to require documentation of a marriage under these circumstances, especially in light of the national statistics reflecting the majority of marriages, more than 50%, ending in divorce.

26. Moreover, it is unreasonable and abuse of discretion to suggest an individual like Mr. Bangura, more than ten years after his divorce, when he was in his early 20's, to

keep evidence of his previous marriage, especially in light of the fact he is now

happily married for five years to his wife, Mrs. Bangura with three children.

27. Relying on tainted statement from Ms. Baylor to deny the instant petition which was

manufactured by the Service, under the guise of Mr. and Mrs. Bangura not providing

sufficient evidence to establish bona fide marriage, while summarily dismissing

substantial and probative evidence that directly establishes the bona fide marriage

is unreasonable and an abuse of discretion.

D. **The USCIS and BIA Did Not Allow Mr. Bangura to Address Ms. Baylor's**
   **Statement Which is an Abuse of Power and Direction**

28. In order to further investigate into the matter, at no point did USCIS interview Mr.

Bangura about Ms. Baylor's statements. As such, the statement made should not be

admissible and/or part of the record for Mr. Bangura's I-130 petition.

29. The substantial evidence standard requires the court "must determine whether

substantial evidence supports a finding by *clear and convincing evidence* that [the

beneficiary] committed marriage fraud." *Id.* at 881 (quoting *Khodagholian v.*

*Ashcroft*, 335 F.3d 1003, 1006 (9th Cir. 2003). In this case, there is no clear and

convincing evidence that Mr. Bangura committed marriage fraud with Ms. Baylor.

The Service is using statement by Ms. Baylor, as a reason to deny the I-130 petition.

This is not clear and convincing evidence that Mr. Bangura committed marriage

fraud; only what Ms. Baylor thinks about their former marriage. This is not

substantial evidence of marriage fraud but hearsay and its use is fundamentally

unfair.

30. In one of the leading cases regarding INA §204(c), the BIA finds that the focus is on

the alien in that "the statute itself does not mention actions taken by United States

citizen or lawful permanent resident spouses but instead focuses on aliens." *Matter of Kahy*, 19 I & N Dec. 803, 806 (1988). The Court further established that "where there is evidence in the record to indicate that the beneficiary has been an *active participant* in a marriage fraud conspiracy, the burden shifts to the petitioner to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage." *Id.* In this case, there should not be any shift in the evidentiary burden because the record does not suggest that Mr. Bangura engaged in marriage fraud. There is no evidence in the record pointing to the fact that he entered the marriage without the intent to make a life with Ms. Baylor. To the contrary there are statements in the record confirming the bona fide marriage between Ms. Baylor and Mr. Bangura. All USCIS can point to is statement made by Ms. Baylor, but the inquiry into the bona fide nature of marriage subsequent to Ms. Baylor's statement was never done, and the Service is relying on Ms. Baylor's statements without questioning Mr. Bangura, Mr. Sheku, and/or Mr. Kamara.

31. As such, the process by which Mr. and Mrs. Bangura's I-130 petition was denied was an inadequate basis and contrary to prevailing case law. There were two witnesses to the marriage: Mr. Bangura and Ms. Baylor. In this case, it is not possible to determine that Ms. Baylor's statement is true and that Mr. Bangura, Mr. Sheku, and Mr. Kamara's statement are false solely by reading them. In addition, Mr. Bangura presented documentary evidence to corroborate his claim that the marriage was bona fide. Therefore, under the specific circumstances of this case, due process requires a hearing with an opportunity for Mr. Bangura to address Ms. Baylor's statements.

**E. The USCIS and BIA Are Utilizing Ms. Baylor's Hearsay Statement and Yet Not Given Weight to Mr. Bangura, Mr. Kamara, or Mr. Sheku's Statements Which is An Abuse of Power and Discretion**

32. In its decision, the Service in regards to Mr. Kamara's statement states "USCIS will not place much stock in a letter that was prepared by an individual (who may or may not be acquainted with you or the beneficiary), as such letters and statements are readily available with minimal effort  However, a properly executed lease prepared by a designated leasing authority, proper management company, or exclusive owner(s) of a certain property can be given credence, as such documents are legally binding and can be authenticated by investigation authorities." Decision at 3.

33. However, this argument is flawed and the Service is incorrectly dismissing Mr. Kamara's sworn affidavit as substantive and probative evidence of bona fide former marriage and instead utilizing a statement by Ms. Baylor as substantial and probative evidence of marriage fraud, which is an abuse of power, and legally and factually incorrect. In his statement, dated September 13, 2016, Mr. Kamara states: "Let it be known that I, Ibrahim Kamara, verify that Momoh Bangura and Lashonna Baylor used to sublet an apartment from me at the following address of 4922 Beauregard St. in 2005. The amount of rent that they pad me was $500.00 a month." Mr. Kamara signed the affidavit, it was notarized, and he provided his phone number. Unlike what the Service states in its denial decision, the notarized affidavit from Mr. Kamara, the owner of the property Mr. Bangura and Ms. Baylor rented from, is legally binding and can be investigated by authorities. However, USCIS chose not to do so and to "not place much stock" in the notarized affidavit but instead of utilizing this notarized affidavit as evidence of bona fide marriage, the

21

Service is inferring an erroneous conclusion in contrast to the substantive and probative evidence provided of a bona fide marriage. Essentially, the Service indicates the statement by Ms. Baylor which the Service concocted and manufactured is substantial and probative evidence. However, Mr. Kamara's sworn affidavit is not evidence of bona fide marriage, which is incorrect and an abuse of power. The Service cannot consider Ms. Baylor's statement as substantial and probative evidence of marriage fraud, and not give equal or more weight to sworn affidavit from Mr. Kamara.

34. Further, in its decision, the Service dismisses the affidavits of Mr. Bangura and Mr. Sheku confirming the marriage between Mr. Bangura and Ms. Baylor was bona fide stating "however, mere testimony alone, in the absence of corroborating evidence to validate such testimony, will be given minimal credence." Decision at 3. Again here, the Service is dismissing affidavits in lieu of utilizing the manufactured and concocted statement by Ms. Baylor as substantial and probative, which is an abuse of power and discretion.

35. Therefore, the Service is erroneously dismissing affidavits from Mr. Bangura, Mr. Kamara, and Mr. Sheku as evidence, and making erroneous conclusions, despite documentation in contrast to their false conclusion. USCIS cannot require certain primary evidence and hold such documents as proof of a bona fide marriage and then summarily dismiss them. This creates a problem for petitioners and applicants like Mr. Bangura and Mrs. Bangura because USCIS creates a policy where most documents are rejected. This policy would then be <u>contrary to due process and</u>

fairness because it does not allow couples to present many documents without fearing that USCIS will dismiss the evidence and make a finding of a sham marriage.

36. Federal courts have used several tests to determine whether a marriage was a sham and entered into for the purposes of evading immigration laws. The test generally used by the courts is whether the marriage was fraudulent-at-inception. This can be determined if the bride and groom did not intend to establish a life together and live in marital union. *Lutwak v. U.S,* 344 U.S. 604 (1954); *Bark v. INS,* 511 F.2d 1200 (9th Cir. 1 1975); *Matter of Mckee,* 17 I. & N. Dec. 332(BIA 1980); *Matter of Laureano,* 19 I. & N. Dec. 1 (BIA 1983). The courts have also looked to the petitioner's subjective state of mind. For USCIS to reasonably infer that the marriage was a sham, it should have documented evidence that the married couple was not living in the same residence and were not sharing financial resources and burdens. The conduct of the parties before and after their marriage is relevant to their intent at the time of their marriage. *Matter of Soriano,* 19 I. & N. Dec. 764 (BIA 1988). We have included substantial evidence to verify that Mr. Bangura and Ms. Baylor's marriage was bona fide at inception; they resided together and shared financial resources and burdens.

37. In sum, it is evident that USCIS and the BIA do not have substantive and probative evidence in the record to support their §204(c) finding. Thus, this conclusion is both arbitrary and capricious. It is evident that USCIS and the BIA erred by ignoring the substantial documentary evidence provided in support of the I-130 petition. The agency's decision also amounts to an abuse of discretion, in that the agencies failed to adjudicate the I-130 petition in accordance with the governing statute and regulations or its own published guidance.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court.

1. Declare unlawful and set aside the Defendant USCIS's decision dated February 27, 2017 and the BIA's December 28, 2017 opinion affirming that decision;

2. Approve the I-130 Petition for Alien Relative filed by Plaintiff Fatmata Bangura on behalf of Plaintiff Momoh Bangura.

3. Award reasonable attorney's fees and costs of the Court under the Equal Access to Justice Act; and

4. Grant such other and further relief as this Court deems proper.

Respectfully submitted on this 26th day of January 2018.

Danielle Beach-Oswald
*Counsel for Plaintiffs*
DC Bar # 489356
Beach-Oswald Immigration Law Assocs., P.C.
888 17th St. N.W., Suite 310
Washington, D.C. 20006
Tel: (202) 331-3084

# LIST OF ATTACHMENTS

*Description*

1. Copy of BIA's decision dated December 28, 2017 . . . . . . . . . . . . . . . . . . . . . . . . 26-29
2. Copy of USCIS's denial dated February 27, 2017 . . . . . . . . . . . . . . . . . . . . . . . . .30-35